******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CARLOS E.*
(AC 36025)

Lavine, Mullins and Bishop, Js.

*Argued February 20—officially released July 21, 2015*

(Appeal from Superior Court, judicial district of
Windham, Boland, J.)

*Alice Osedach*, assistant public defender, with whom
was *Jesse Smolin*, certified legal intern, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with
whom were *Patricia M. Froehlich*, state's attorney, and
*Andrew J. Slitt*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Carlos E., appeals from the judgment of conviction of three counts of risk of injury to a child pursuant to General Statutes § 53-21 (a) (2). On appeal, the defendant claims: (1) he was prejudiced in his defense when the trial court permitted the state to file an amended long form information without demonstrating good cause or that the substitution would not violate his substantive rights; (2) the court improperly admitted, without redacting the double hearsay contained therein, the defendant's written statement to police; and (3) he was deprived of a fair trial due to prosecutorial impropriety in closing argument. Although we agree that one of the prosecutor's comments was improper, we, nevertheless, conclude that it was harmless. We reject the defendant's other claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. The victim, who was born in August, 1993, lived with her mother and her two older brothers in an apartment complex. The victim's aunt, who was the sister of the victim's mother, also lived in the apartment complex with the defendant and their four children.

In 2003, the victim was in the third grade.[1] During that year, the defendant was unemployed and he stayed home to care for his children while his wife worked the 3:30 p.m. to 11:30 p.m. shift at her job. The defendant also babysat the victim both before school and after school, until the victim's mother returned home from work. On three occasions during 2003, the defendant pulled down the victim's pants and underwear and inappropriately touched her vaginal area and buttocks, and, on the third occasion, he also made the victim touch his erect penis and he rubbed his penis against her leg. The defendant also threatened the victim, telling her that he would kill her mother and brothers if she told anyone about his actions.

The victim remained silent until she was in seventh grade, which was in 2007, when she told her best friend about the abuse. Then, several years later, in 2011, when the victim was seventeen years old, she told her mother that she was pregnant. Approximately one and one-half weeks later, the victim disclosed to her mother that she had been sexually abused by the defendant. The victim's mother insisted that the victim discuss these events with a counselor, who reported the abuse to the police. The victim then met with the police and gave a statement. The police, thereafter, questioned the defendant, who also gave a written statement.

The state charged the defendant with three counts of risk of injury to a child. During trial, the defendant's theory of defense was that the victim concocted the

abuse allegations in order to divert focus from her pregnancy, and he could not have abused the victim because he never had babysat the victim when his wife was at work, but that his wife always had been present when he babysat the victim. The jury found the defendant guilty, and the court accepted the verdict and sentenced the defendant to a total effective sentence of thirteen years imprisonment, execution suspended after seven years, with twenty years of probation. This appeal followed.

## I

The defendant claims that the court abused its discretion by permitting the state to file an amended long form information without demonstrating good cause or that the substitution would not violate the defendant's substantive rights.[2] Specifically, he claims: "The defendant was prejudiced in his defense as a result of a material variance between the allegations stated in the January 16, 2013 long form information and the revised long form information, which was released at the start of the trial and substantial injustice was done to the defendant because of the variance." Because this claim is unpreserved, the defendant requests that we review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Although the record is adequate for review and the claim is of constitutional magnitude, the alleged constitutional violation does not clearly exist because the defendant has failed to demonstrate a denial of due process. Specifically, the defendant has failed to show that he suffered prejudice as a result of the amended information. See *State* v. *Enrique F.*, 146 Conn. App. 820, 825, 79 A.3d 140 (2013) (improper revised information implicates defendant's right to fair notice of charges against him, but, on appeal, defendant bears burden of making specific showing of prejudice in order to establish due process violation), cert. denied, 311 Conn. 903, 83 A.3d 350 (2014).

The following additional facts and procedural history inform our review. The prosecutor, on January 16, 2013, filed a long form information in which he alleged that the defendant had sexually abused the victim on or about divers dates in 2004. The defendant then requested, inter alia, that the time frame be narrowed to at least state a particular season. The prosecutor stated that he expected the victim to testify that the abuse occurred between January, 2004, and the end of the school year in 2004.[3] On February 14, 2013, prior to the start of evidence, the prosecutor filed an amended long form information changing the dates of the alleged abuse from divers dates in 2004, to divers dates in 2003. The defendant's attorney stated that his previous objection still stood. The court permitted the filing of the amended information. Thereafter, the jury was sworn, and the court read the amended information to the jury,

along with its preliminary instructions. The defendant claims that the court abused its discretion by allowing the state to file the amended information without establishing good cause or that the defendant's substantive rights would not be violated by the amendment.

"Our standard of review and the requirements for amending the information are well established. On appeal, our [standard of review] of the court's decision to permit an amendment to the information is one of abuse of discretion. . . . Before a trial begins, the state has broad authority to amend an information . . . . Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 36-18. . . . If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that no substantive rights of the defendant would be prejudiced. . . . Like any other party petitioning the court, the state must demonstrate the basis for its request. Under [Practice Book § 36-18], the state must show: (1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced. . . . [When the] defendant does not allege that the amended information charged an additional or different offense . . . the only issues are whether the state had good cause to amend the information and whether [the defendant] suffered prejudice." (Citation omitted; internal quotation marks omitted.) *State* v. *Enrique F.*, supra, 146 Conn. App. 824.

"[An] improper amendment of the information implicates the defendant's constitutional right to fair notice of the charges against him. . . . At trial, the state has the burden of proving that amending the information does not prejudice the defendant's substantive rights. . . . On appeal, however, the defendant bears the burden of making a specific showing of prejudice in order to establish that he was denied the right of due process of law. . . . In the prejudice analysis, the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense. . . . If the defendant has not asserted an alibi defense and time is not an element of the crime, then there is no prejudice when the state amends the information to amplify or to correct the time of the commission of the offense . . . . Ultimately, if the amendment has no effect on the defendant's asserted defense, there is no prejudice." (Citations omitted; internal quotation marks omitted.) Id., 825–26.

In this case, it does not appear that the state attempted to establish to the trial court that it had good cause to submit an amended information after the start of trial or that the court explicitly found good cause to permit such an amendment.[4] See id., 824 ("[t]o show good cause to amend, the state *must articulate* a reason why the amendment is required" [emphasis added]).

Nevertheless, we must consider whether the defendant has established the existence of a due process violation by demonstrating that he suffered prejudice as a result of the amendment. The defendant contends that he suffered prejudice because "[h]ad the defense been informed earlier of the date change, the defendant would have had more time to prepare the witness [his wife] to speak about 2003 and refute the fact that any allegations occurred during that year. . . . At the time of the state's amendment, the defendant had only prepared a defense for the time frame of 2004 . . . ." (Citation omitted.) He also argues: "If the defendant had fair notice of the dates alleged, he would have been able to establish a defense that included that time frame and created a reasonable doubt in the minds of the jurors." We are not persuaded.

The defendant's relevant theory of defense was that he never babysat the victim without his wife being present in the home and that they had watched the victim only for a brief period of time, namely, approximately ten days during her winter vacation from school in December, 2004. The defendant did not testify at trial. He did, however, present the testimony of his wife and two of his children.

The defendant's wife testified, in relevant part, that she and the defendant babysat the victim only in the last week of 2004, that she was there the entire time, and that the defendant never was alone with the victim. One of the defendant's children, who was seventeen at the time of trial, testified, however, that in 2003, the defendant babysat the victim after school, when she got off the bus. He stated that the defendant never was alone with the victim or with any of the children, and that his mother, the defendant's wife, was home with them. Another of the defendant's children testified that his father babysat the victim after school, but that his mother always was present.

The defendant argues on appeal that the extent of the prejudice caused by the amended information was not fully known until the state called the human resource person from his wife's employer, who testified that the defendant's wife usually worked from 3:30 p.m. to 11:30 p.m. during 2003. Appellate counsel contended during appellate oral argument that the defendant's wife worked different hours in 2004 and that she was home when the children returned from school each day. The record, however, does not substantiate this contention.

Although the defendant correctly states that the record demonstrates that his wife worked 3:30 p.m. to 11:30 p.m. during 2003, her attendance records for 2004 and 2005 also were admitted as full exhibits for the defendant during trial. These records clearly show that the defendant's wife worked the same hours, 3:30 p.m. to 11:30 p.m., during almost all of 2004; in 2005 she worked first shift, which was 7:30 a.m. to 3:30 p.m.

Additionally, the defendant's wife specifically testified that she worked second shift, 3:30 p.m. to 11:30 p.m., throughout 2003 and into the last week of December, 2004, when she changed to first shift. The defendant has failed to demonstrate a denial of due process by showing that he was prejudiced by the filing of an amended information on the first day of evidence. Accordingly, his claim fails under the third prong of *Golding*.

## II

The defendant's next claim is that the court improperly admitted his statement to police without redacting the double or triple hearsay contained therein. He argues that the "state presented evidence that was inadmissible under §§ 8-1, 8-2 and 8-7 of the Connecticut Code of Evidence, that included the defendant recalling, not his own thoughts or feelings but, what his wife told him that [the victim] had told her mother [namely] that he inappropriately touched [the victim] in her private parts. Thus, it is double hearsay since the defendant quoted something his wife told him that she heard from [the victim's] mother, who heard it from [the victim]." The defendant further argues that he was harmed by the court's ruling because there can be "no doubt that the jury was substantially swayed by the inclusion of this double hearsay and the state's emphasis and use of it in closing argument."

The state argues that the court properly admitted the statement without redaction because the single sentence sought to be excluded was not hearsay. The state also contends that the sentence was evidence of the defendant's consciousness of guilt. Finally, the state argues that, even if the court erred in not redacting the statement, the defendant cannot demonstrate harm because this single sentence was cumulative of the remainder of the statement. We conclude that even if the court improperly admitted the statement without redaction, the defendant has failed to demonstrate harm because the contested portion of the statement merely was cumulative of other portions of the statement.

The following additional facts are relevant to our review. During the testimony of Trooper Pedro Nunez of the Connecticut State Police, the state sought to admit into evidence the written statement of the defendant. The defendant objected to one sentence in the statement on hearsay grounds.[5] That sentence provided: "I remember around that time my wife . . . came up to me and told me that [the victim] told her mother . . . that I inappropriately touched her in her private parts." The prosecutor argued that this sentence was not hearsay because it was not being offered for the truth of the matter asserted, and that he actually "believe[d] the defendant made that up to protect himself." He further argued that the sentence was incriminating on its face, it was untrue, it was not being offered

for its truth, and, therefore, it was not hearsay. The court overruled the defendant's objection and admitted the statement in its entirety.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion *and* a showing by the defendant of substantial prejudice or injustice. . . . This deferential standard is applicable to evidentiary questions involving hearsay, generally . . . and to questions relating to prior consistent statements, specifically." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 801–802, 709 A.2d 522 (1998).

"[T]o the extent that we assume impropriety in the trial court's evidentiary [rulings], [w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harm[ful] should be whether the jury's verdict was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *Paul B.*, 315 Conn. 19, 30–31, 105 A.3d 130 (2014). "It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted [evidence]." (Internal quotation marks omitted.) *State* v. *Dehaney*, 261 Conn. 336, 364, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

The defendant's statement, *without the portion sought to be redacted*, provided: "I have been living in [a certain area] for approximately [eighteen] years. Approximately [eight] or [nine] years ago, I resided at [a certain address] with my wife [and four children]. At that time, I was unemployed and stayed home cooking and watching the children. I remember around that time watching my wife's niece [the victim] from about 3:30 p.m. to 4:00 p.m. until her mother . . . would get home from work. [The victim] would also come over in the mornings and stay with [two of my children] until the school bus came to pick them up. . . . I told my wife . . . and [the victim's mother] that she would have to find another babysitter because I didn't want any problems. I can't think of any reason that [the victim] would accuse me of ever touching her private area. When I learned that she accused me of touching her, I

was upset and told [my wife and the victim's mother] that I refuse to watch her anymore."

It is clear from reading the defendant's statement *without the contested sentence*, that the defendant stated that he had watched the victim both in the morning and after school, and that he stopped watching her because he was upset that she had accused him of touching her. The challenged portion of the statement added nothing particularly relevant to the state's case that was not already contained in the remainder of the statement. On this basis, we conclude that the defendant has failed to demonstrate that the admission of the unredacted statement was harmful. See *State* v. *Dehaney*, supra, 261 Conn. 352 (despite "affidavit improperly [being] admitted because it did not satisfy the hearsay state of mind exception . . . [i]ts erroneous admission . . . was harmless because it was cumulative of other properly admitted evidence").

### III

The defendant claims that "[t]he prosecutor made numerous improper statements during closing [rebuttal] argument that were individually and cumulatively so egregious that they deprived him of his constitutional right to a fair trial pursuant to the fifth and fourteenth amendments [to] the United States constitution, and article first, § 8, of the constitution of Connecticut."[6] The defendant contends that the prosecutor, during rebuttal argument, improperly (1) appealed to the passions and emotions of the jurors through the excessive use of sarcasm, (2) repeatedly interjected his own opinions, especially on the issue of witness credibility, and (3) argued facts not in evidence. The state argues that, when taken as a whole and viewed in context, there is nothing improper in the prosecutor's comments. After setting forth our standard of review, we will consider each of these alleged areas of impropriety in turn.

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Miller*, 128 Conn. App. 528, 535, 16 A.3d 1272, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011).

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . We first

examine whether prosecutorial impropriety occurred." (Internal quotation marks omitted.) *State* v. *Chase*, 154 Conn. App. 337, 341, 107 A.3d 460 (2014), cert. denied, 315 Conn. 925, 109 A.3d 922 (2015). In conducting such an examination, we take into account whether the defendant objected to the allegedly improper comment. Where, as here, "the defendant failed to object at trial to the remarks that form the basis of his appeal, our Supreme Court has explained that a defendant's failure to object at trial to each of the occurrences that he now raises as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Internal quotation marks omitted.) Id., 343–44.

"Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . . An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . [If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Chase*, supra, 154 Conn. App. 341–42.

### A

The defendant claims that the "prosecutor appealed to the passions and emotions of the jurors through his repeated and excessive use of sarcasm." He argues that these sarcastic statements and phrases were made only to denigrate the defendant and his main witness. We are not persuaded.

"[W]e have recognized that the excessive use of sar-

casm may improperly influence a jury. . . . [N]eedless sarcasm [is] inconsistent with [a] state's attorney's professional responsibility . . . . Although we neither encourage nor condone the use of sarcasm, we also recognize that not every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . [S]ome use of sarcastic and informal language, when intended to forcefully criticize a defense theory on the permissible bases of the evidence and the common sense of the jury, is not necessarily improper. . . . Further, it is important to note that defense counsel's failure to object to allegedly sarcastic and denigrating comments . . . as in the present case, suggests that counsel did not believe the alleged improprieties were unfair in light of the record at that time." (Citations omitted; internal quotation marks omitted.) *State* v. *Grant*, 154 Conn. App. 293, 320–21, 112 A.3d 175 (2014), cert. denied, 315 Conn. 928, 109 A.3d 923 (2015).

The defendant argues that the following statement made by the prosecutor was overly sarcastic. "So let me see, if I get this straight. The entire defense case is based on a couple of inconsistent memories that the victim had in the case. Number one, that she—she can't remember whether—or her memory about whether she had the good-touch, bad-touch conversation with her mother happened or not. And, number two, she didn't correct the date of birth the Trooper Nunez put on her statement. . . . So she didn't correct those two things or her memory was inconsistent about that, so that's— so that's the problem with her testimony. That's what you're supposed to believe." Additionally, the defendant contends that the prosecutor's repeated use of the phrase "star witness" to describe the defendant's wife, who testified on the defendant's behalf, also was unduly sarcastic. He contends that the combination of these sarcastic remarks amounted to prosecutorial impropriety. We disagree.

Although we do not condone the use of sarcasm by a prosecutor, we, nevertheless, generally do not consider a limited use to rise to the level of impropriety. Here, the first comments by the prosecutor of which the defendant complains, namely, the prosecutor's use of "let me see if I get this straight" and "that's what you're supposed to believe," were an attempt by the prosecutor to call into question a *theory of defense* raised by defense counsel during closing argument, namely, that the victim was not credible. See *State* v. *Grant*, supra, 154 Conn. App. 324. The comments were not an attempt to disparage the defendant, but, rather, were comments meant to suggest that the jury should not believe that the victim was not credible simply because she may have forgotten two minor details. Use of such a rhetorical device is not improper. Id. We also conclude that the prosecutor's use of the phrase "star witness" on three occasions to describe the defendant's

wife did not rise to the level of impropriety. Indeed, in point of fact, the defendant's wife was the key witness the defendant presented to exculpate himself for these crimes by showing that she always babysat with him and that he could not have committed these crimes against his wife's niece while his wife was present. Thus, her testimony was the basis on which the defendant's defense principally relied. Highlighting her as the "star witness" simply was factually accurate. Furthermore, even if the term was questionable in terms of being sarcastic, it was not only based on the evidence presented but it also was not excessive, nor did it denigrate the defendant or his witness.

B

The defendant next claims that "[p]rosecutorial impropriety occurred when the prosecutor repeatedly interjected his opinion in his [rebuttal] argument." He argues that the prosecutor improperly expressed his opinion concerning the victim's credibility by telling the jury that the victim had no motive to lie, that she was telling the truth, that she did the right thing by coming forward, and that she was looking for justice when she came forward. Additionally, the defendant contends that the prosecutor improperly told the jury that the victim sacrificed herself by not coming forward earlier. Finally, the defendant argues that the prosecutor improperly expressed his opinion concerning the defendant's guilt when he told the jury that parts of the defendant's sworn statement to the police were not true. We are not persuaded that any of these comments were improper.

"A prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . It is not, however, improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435, 902 A.2d 636 (2006).

Additionally, our Supreme Court "previously has concluded that the state may argue that its witnesses testified credibly, if such an argument is based on reasonable inferences drawn from the evidence. See *State* v. *Burton*, 258 Conn. 153, 169–70, 778 A.2d 955 (2001). Specifically, the state may argue that a witness

has no motive to lie. Id., 170; see also *State* v. *Bermudez*, 274 Conn. 581, 592–93, 876 A.2d 1162 (2005) (prosecutor may argue from evidence that state's witnesses had no motive to lie), after remand, 95 Conn. App. 577, 897 A.2d 661 (2006); *State* v. *Ancona*, [270 Conn. 568, 607, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005)] ('[i]t is permissible for a prosecutor to explain that a witness either has or does not have a motive to lie'); *State* v. *Ceballos*, 266 Conn. 364, 380–81, 832 A.2d 14 (2003) (state's closing argument was not improper because it discussed complainant's lack of motive to lie). In addition, jurors, in deciding cases, 'are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . .  Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks.' . . .  *State* v. *Ceballos*, supra, 402; see also *State* v. *Rogelstad*, 73 Conn. App. 17, 30, 806 A.2d 1089 (2002)." *State* v. *Warholic*, 278 Conn. 354, 365, 897 A.2d 569 (2006).

A review of each of the challenged comments involving the victim, reveals that they were tied to the evidence and the reasonable inferences to be drawn therefrom. Additionally, contrary to the defendant's argument, it is not improper for the prosecutor to outline the evidence and its reasonable inferences for the jury and then to explain, on the basis of such evidence, that the witness had no motive to lie. See id.

We next consider the prosecutor's comments regarding the defendant's written statement to police and whether these comments amounted to an expression of opinion concerning the defendant's guilt. The specific comments of which the defendant complains are as follows: "So if you believe [the defendant's] statement, we're expected to believe that both [the victim's] mother and [the victim's] aunt knew about this accusation in 2003 and did nothing about it for eight years. That's not true. It doesn't make any sense that he would say—the reasons he says this is because he's trying to save himself. But that never happened. That conversation never happened. . . .  There was no accusation made in 2003—2003 or 2004. That's not why he stopped watching the kids." The defendant also expresses concern about the following: "[The defendant] admits he's home watching his children—his own children, plus [the victim]. That's in his statement. Contrary, his wife gets up here and says something completely different. And, again, [the defendant's statement] says around that time his wife told him about the accusation. We know that's just not true. It doesn't make any sense. You folks are intelligent people; you can see through that."

The defendant contends that "[b]y arguing that parts of the defendant's sworn statement were not true, the

prosecutor was in essence arguing that the defendant was guilty."

After reviewing these comments and considering them in the context in which they were made, we conclude that they were based on the evidence, especially the contradiction between the defendant's sworn statement and the testimony of the defendant's wife, as well as the other trial witnesses, and that the comments did not express the prosecutor's personal opinion on the defendant's guilt. The prosecutor merely pointed out the contradiction between the defendant's sworn statement and other evidence, including the testimony of the defendant's own witness, and asked the jury to draw reasonable inferences from that evidence.

C

The defendant also claims that the prosecutor improperly argued facts not in evidence. He argues: "The prosecutor told the jury 'and by the way, she [the victim] wasn't pregnant in junior high school when she told—when she told her friend . . . [about the assaults].' There was no evidence introduced by either party regarding whether [the victim] was pregnant in junior high school." The state argues that this statement was based on the evidence and the reasonable inferences that could be drawn therefrom. We conclude that the statement was improper.

1

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 766–67, 51 A.3d 988 (2012). "[T]he privilege of counsel in addressing the jury . . . must never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence, or to present matters which the jury [has] no right to consider." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 587, 849 A.2d 626 (2004).

To put the defendant's claim in proper context, we set forth the relevant portion of his attorney's closing argument and the prosecutor's response thereto. During closing argument, defense counsel argued that this case was about a scared seventeen year old girl who was afraid because she was telling her mother that she was pregnant. He stated that the case was "about a seventeen year old pregnant girl who tells a story about a nine year old girl." Counsel also stated: "[S]he told her mother about the pregnancy. That's when she tells her mother about all of this. This is when she tells her this story about what happened years ago when she came out to her mother about her pregnancy. That is crucial. She's testified that she knew for about a week and a

half that she was pregnant before she told her mother about this. She was scared. She was scared because she was pregnant. She was scared because she was telling her mother that she was pregnant. She came up with the story to draw attention from her pregnancy. And guess what, it worked."

In rebuttal argument, the prosecutor responded to this argument by discussing testimony that had been presented concerning delayed disclosures by childhood victims and testimony that older children normally tell their peers about such abuse. He then explained that in this case, the victim eventually told her best friend about the abuse when they were in junior high school. The prosecutor then stated: "And by the way, [the victim] wasn't pregnant in junior high school when she told—when she told her friend . . . . The defense wants you to think that the entire motivation for this fabrication was so that she could deflect the attention off of her pregnancy, which, by the way, her mother testified that she was fully supportive of and there was no issue with her being pregnant. But this [flies] in the face of that because she told her [friend] in seventh grade . . . . She wasn't pregnant then."

The defendant complains that there is absolutely no evidentiary basis for the prosecutor's statement that the victim was not pregnant in seventh grade. The state responds: "[T]here was no evidence that the victim *was pregnant* in seventh grade when she first disclosed the abuse to her friend, and it was a reasonable inference that the victim's one year old child was the result of the 2011 pregnancy. Thus, the argument was proper." (Emphasis added.) We disagree with the state's response for two reasons.

First, the prosecutor's argument was not tied to the evidence. Rather, it was a factual assertion that the victim was not pregnant in junior high school when there was not a scintilla of evidence to support such an assertion. Second, the state's argument, that because there was *no evidence* that she *was* pregnant in junior high school, it essentially proves that she *was not* pregnant in junior high school, simply is illogical. Accordingly, we conclude that the statement was improper.

2

Because we conclude that the aforementioned comment was improper, we next must consider whether the comment deprived the defendant of a fair trial.

In the present case, the defendant's attorney did not object, request a curative instruction or move for a mistrial on the basis of the prosecutor's improper comment. See *State* v. *Jordan*, 314 Conn. 89, 114, 101 A.3d 179 (2014) ("[w]hen defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defen-

dant's right to a fair trial" [internal quotation marks omitted]). Furthermore, examining the *Williams* factors as a whole, we are not persuaded that they weigh in the defendant's favor. Although the comment was not invited by defense counsel, the comment did not amount to severe impropriety, which is evinced by defense counsel's lack of objection or request for any curative measure. The impropriety was not frequent, as it was confined to a brief comment during rebuttal argument. Moreover, whether the victim was pregnant in junior high school when she told her friend about the abuse was not central to the critical issues in this case.

Finally, with regard to the final *Williams* factor, the strength of the state's case, "[o]ur Supreme Court has noted that a child sexual abuse case lacking conclusive physical evidence, when the prosecution's case rests on the credibility of the victim . . . is not particularly strong . . . . At the same time, [t]he state's evidence does not need to be overwhelming to support a conclusion that prosecutorial impropriety did not deprive the defendant of a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Chase*, supra, 154 Conn. App. 353. Here, although the state's case was not particularly strong, it was not so weak as to be overshadowed by a single improper comment that had no evidentiary basis. On the basis of the foregoing, we conclude that the defendant was not deprived of the right to a fair trial on the basis of prosecutorial impropriety.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The facts also demonstrate that the victim repeated third grade.

[2] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

[3] The defendant also had filed a request for a bill of particulars. The court denied that request, stating that because the allegations stemmed from conduct many years ago dealing with a child victim, who may have difficulty recalling the precise time frame, the disclosure of the calendar year in which the abuse was alleged to have occurred was sufficient. The defendant, although making some minor comments in his brief about that ruling, has not set forth a separate claim that the court abused its discretion in denying his request for a bill of particulars.

[4] The state contends that the court implicitly found good cause and did not state it for the record because the defendant did not object on that ground to the amendment. We are not persuaded by this contention. The record does not demonstrate any attempt by the state to articulate good cause for the amendment, and the court did not discuss or mention good cause to permit the amendment. Nevertheless, because the defendant, on appeal, has the burden of proving prejudice in order to establish a due process violation, we must examine whether he met this burden.

[5] The defendant also objected on the ground that this portion of his statement, if not hearsay, was improperly being offered by the prosecutor as impeachment evidence before the defendant had even decided whether he would testify on his own behalf. The defendant has not briefed the merits of this objection on appeal.

[6] Although the defendant brings his claim under the United States constitu-

tion and article first, § 8, of the Connecticut constitution, he has not con-
ducted an independent analysis under the Connecticut constitution. We,
therefore, deem any separate state constitutional claim to be abandoned.
See *State* v. *Francis*, 228 Conn. 118, 122 n.3, 635 A.2d 762 (1993).

.