******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* BERNARD J. PELUSO
## (SC 20303)

McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.*

*Syllabus*

Convicted of the crimes of sexual assault in the first degree, sexual assault in the fourth degree, and risk of injury to a child in connection with the alleged sexual abuse of the minor victim, the defendant appealed. The sexual abuse allegedly occurred when the defendant was living in the same condominium complex as the victim and her family. The original information and the long form substitute information, the latter of which was filed three weeks before the start of evidence, both alleged that the abuse occurred in 2010 or 2011, when the victim was in the fifth grade, which was consistent with the victim's sworn statement to the police. At trial, however, the victim testified that the alleged abuse occurred in 2008 or 2009, when she was in the third grade. Thereafter, the defense moved for a judgment of acquittal on the ground that the alleged offenses could not have occurred in the time frame alleged in the long form information because the defendant did not live in the condominium complex at that time. In response, the state moved to amend its information to allege that the incidents of abuse had occurred in 2008 or 2009, consistent with the victim's testimony. Defense counsel objected, arguing that the state had failed to show good cause for the late amendment, as required by the applicable rule of practice (§ 36-18), insofar as the prosecutor admitted to the court that the state had become aware two to four weeks before the start of trial, when preparing the victim for her court appearance, that the time frame alleged in the information was inaccurate and that the alleged incidents of abuse could not have occurred in 2010 or 2011. Defense counsel also argued that the defendant would be prejudiced by the late amendment because the defendant's entire defense was based on the fact that he did not live in the condominium complex in 2010 or 2011. The trial court granted the state's motion to amend its information, determining that there was good cause for the late amendment, in part because of the victim's young age. The Appellate Court affirmed the judgment of conviction, concluding that the trial court had not abused its discretion when it found that good cause existed to permit the state to amend its information after the start of trial and that the defendant had not been prejudiced by the late amendment. On the granting of certification, the defendant appealed to this court. *Held* that the Appellate Court incorrectly concluded that the trial court had not abused its discretion in permitting the state to amend its information after the start of trial on the ground that good cause existed for the late amendment, and, accordingly, the judgment of the Appellate Court was reversed, and the case was remanded with direction to reverse the judgment of conviction and to remand for a new trial: although Connecticut courts routinely have allowed the state to amend its information in light of a minor victim's testimony at trial when the state could not have reasonably anticipated a change in the victim's testimony or when the state experienced some unforeseeable difficulty in limiting the time frame in question before trial, in the present case, the state became aware, two to four weeks prior to trial, that the time frame alleged in its information was inaccurate or incomplete, the state knew, prior to the start of trial, that the defendant did not live in the condominium complex in 2010 or 2011, and, therefore, that the abuse must have occurred before 2009, when the defendant moved out of the condominium complex, and the state failed to act on that knowledge; moreover, although the victim's trial testimony that the abuse occurred when she was in the third grade may have alleged a narrower time frame than the state anticipated prior to trial, this additional degree of specificity did not obviate the state's duty to amend its information before trial to provide the defendant with the more accurate information in its possession, and the focus on the victim's young age and the general deficiencies in the testimony of minor victims regarding dates distracted from the central question of whether the state had good

cause to amend its information after the start of trial, even though it first became aware weeks before the defendant's trial that the time frame alleged in the information was inaccurate; furthermore, although the timing of the alleged abuse was not a material ingredient of the charged offenses and the defendant did not assert an alibi defense, the defendant was prejudiced by the late amendment to the information because that timing was a material factor in the defendant's theory of defense, as a review of the record, including defense counsel's cross-examination of various witnesses and his focus on the victim's conflicting accounts of the timing of the alleged abuse, confirmed that the defendant's defense was predicated on the fact that he did not live in the condominium complex in 2010 or 2011 and that it was impossible for him to have been there at that time, the amendment to the information effectively precluded him from asserting that defense, and the record suggested that the defendant would likely have presented a different defense if the amendment to the information had been made prior to trial.

Argued March 29—officially released August 18, 2022**

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of sexual assault in the first degree and sexual assault in the fourth degree, and with three counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *K. Murphy, J.*; thereafter, the state filed an amended information; verdict and judgment of guilty, from which the defendant appealed; subsequently, the Appellate Court, *DiPentima, C. J.*, and *Sheldon* and *Bear, Js.*, affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *new trial.*

*James P. Sexton*, assigned counsel, with whom was *Megan L. Wade*, assigned counsel, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. We consider in this certified appeal whether the trial court abused its discretion by allowing the state to amend its information after the commencement of trial when the state was aware, between two to four weeks prior to the start of trial, that the time frame alleged in its information was inaccurate.[1] The defendant, Bernard J. Peluso, appeals from the judgment of the Appellate Court, which affirmed the trial court's judgment of conviction, rendered after a jury trial, of two counts each of sexual assault in the first degree and sexual assault in the fourth degree, and of three counts of risk of injury to a child. See *State* v. *Peluso*, 187 Conn. App. 498, 500–501, 511, 202 A.3d 1085 (2019). On appeal to this court, the defendant contends that the Appellate Court incorrectly concluded that the state had demonstrated good cause to amend its information during trial and that the defendant's substantive rights would not be prejudiced by the late amendment. See id., 501. We agree with the defendant and, accordingly, reverse the judgment of the Appellate Court and order a new trial.

The Appellate Court's opinion, as supplemented by the record, sets forth the facts and procedural history; see id., 501–505; which we summarize in relevant part. In 2008 and 2009, when the victim, S,[2] was in third grade, she lived in a condominium complex with her mother, her older sister, L, and her older brother. At that time, the defendant was living with his girlfriend in the same condominium complex. S and L spent a lot of time with the defendant during that time period; approximately three to five times per week, S and L would go to the defendant's condominium after school. The defendant was "like an uncle" to S and L, and he called them his nieces. Generally, the defendant's girlfriend was not home during the times he spent with S and L after school. On certain occasions, S spent time alone with the defendant. It was during these times, in particular, that the defendant began making sexually suggestive comments to S. Soon thereafter, he allegedly began sexually assaulting her.

In connection with three separate incidents of alleged abuse that occurred "[o]n or about . . . 2010–2011"; see id., 502 and n.3 (describing those three incidents and other uncharged misconduct); the defendant was arrested and charged on January 14, 2015, with one count of sexual assault in the first degree and two counts of risk of injury to a child. In April, 2016, more than fifteen months after the defendant was originally charged and during the first day of jury selection, the state filed a long form substitute information, in which it charged the defendant with two counts each of sexual assault in the first degree and sexual assault in the fourth degree, and with three counts of risk of injury to a child, but continued to allege that the incidents

occurred "on or about a date during the year 2010 or 2011 . . . ."[3] The long form information was filed while the prosecutor was in court and in the presence of defense counsel. At trial, approximately three weeks later, however, during her direct examination, S acknowledged that she had been prepared for her courtroom appearance by the prosecutor "a few weeks" beforehand and testified that the incidents had occurred when she was in third grade, in 2008 or 2009.

On cross-examination, defense counsel inquired regarding the inconsistency in the time frames. Specifically, defense counsel confirmed that, in her sworn statement to the police, taken in 2015, S alleged that the incidents occurred in 2010 or 2011, when she was in fifth grade. The following colloquy occurred:

"[Defense Counsel]: Was your memory better [in 2015] or was it better today?

"[S]: Today.

"[Defense Counsel]: And it is better today because you testified that, two weeks before this trial, you start[ed] preparing with the state . . . is that correct?

"[S]: Yes.

"[Defense Counsel]: And is it correct that you were told by either the assistant state's attorney or an investigator that [the defendant] did not live in that [condominium] unit in the year[s] 2010 and 2011?

"[S]: Yes.[4]

"[Defense Counsel]: And, when you were in fifth grade, ten years old . . . [although] you swore [in your statement to the police] that this is when [the incidents] occurred, that was impossible because [the defendant] didn't live there. Isn't that correct?

"[S]: Yes." (Footnote added.)

The next day, the defense moved for a judgment of acquittal on the ground that the alleged offenses could not have occurred in 2010 or 2011, the time frame alleged in the state's long form information filed at the beginning of jury selection approximately three weeks earlier, because the defendant did not live in the condominium complex at that time. The state, in turn, moved to amend its information to allege that the incidents had occurred in 2008 or 2009, consistent with S's trial testimony. The court inquired: "[W]hen did the state become aware that the approximate date was not the year 2010 or [20]11?" The prosecutor responded: "When we met with [S] . . . two to four weeks ago. In discussing the facts of the case, she indicated to us, in our interview . . . that she couldn't recall specifically when it was. My recollection of our conversation was that she indicated that it was sometime in grammar school, fifth grade or [earlier]. . . . So, she did not narrow it down for us, like she did in court yesterday,

essentially left it with us that she thought it was fifth grade or earlier, that she was younger but not [in] middle school. And, when she was in court yesterday, we all know that she was quite specific and testified . . . that she was eight years old or in third grade."

Defense counsel objected to the state's motion to amend, arguing that the state failed to show good cause for the late amendment, as required by Practice Book § 36-18. Defense counsel contended that the state knew, two to four weeks before trial, when it prepared S for her court appearance, that the time frame alleged in its information was inaccurate and that the alleged incidents could not have occurred in 2010 or 2011. Defense counsel argued that the state had no justifiable reason for failing to properly amend its information before the commencement of trial. In addition, defense counsel argued that the defendant would be prejudiced by the late amendment insofar as his "entire defense was based on [the] fact that it was impossible for [the defendant] to be there [in 2010 or 2011]," as the defendant did not live in the condominium complex when the events allegedly occurred.

In response to defense counsel's claim of prejudice, and without directly addressing the good cause aspect of defense counsel's objection,[5] the prosecutor argued that the defendant was not unduly prejudiced by the change in time frame, as S—in her police statement and subsequent testimony—consistently indicated that the offenses occurred when the defendant was living in the condominium complex. The prosecutor specifically noted: "[S] talk[ed] about [the defendant's] couches, his pornography magazine, his desks, his bed when he clearly is living there. . . . She talked about how they cooked, how they watched TV. So, this is not an undue surprise to the defendant."

Ultimately, the trial court granted the state's motion to amend its information. In reaching its decision, the court considered the requirements set forth in Practice Book § 36-18. First, the court stated: "I will find good cause. This is a child sexual assault case. This does involve a very young child. The incident[s] occurred when [S] was eight or nine [years old] . . . . [T]here [are] [a] substantial amount of studies that indicate [that] children of those age[s] have no conception of dates and times. [S] was very clear that [the abuse] occurred with the defendant. And it's very clear . . . that the defendant had access to [S] for a period of time, whether it was 2010 or 2008. So, you know, we're [talking] basically of semantics." Second, the court found that "there are no additional charges [in] . . . the [state's amended information]." Finally, the court went on to discuss whether the defendant's substantive rights would be prejudiced due to the state's late amendment. The court explained: "I don't believe it's [the] defense's position that the defendant committed these

acts two years earlier, so . . . their defense is . . . just that they were committed [on] a different date than the [long form] information [alleged]."[6]

In light of the newly amended information, the trial court offered to grant the defendant a continuance in order to prepare his defense. Because the case was "early in the game," the court expressed that it was confident that it would have available jurors "[one] week from now, [or one] month from now." Accordingly, the court indicated that it would provide the defendant "as long a continuance as . . . [was] need[ed] to prepare . . . ." Following a recess, defense counsel informed the court that the defendant would need a continuance. Defense counsel requested "at least five weeks." The court responded: "To do what? No. No. No. Be specific here, [counsel]. We're not taking a five week continuance unless—if you need a five week continuance, you'll get it." The court then asked defense counsel to be specific and explain what the defense would need to do during the continuance period. Once the court established that the continuance was needed to "do some records checking," the court granted defense counsel a one week continuance. The court further stated: "[Y]ou can subpoena . . . any witness that you feel you need to examine, as well as anyone that's already been called, you could examine again."

Later that day, defense counsel informed the court: "I talked to [the defendant], Your Honor. If it works out better for Friday rather than next Tuesday to resume . . . we would be willing to come back Friday." Thus, although the court was prepared to grant the defendant a one week continuance, defense counsel informed the court that, under the circumstances, the defense would be ready to resume three days later, on Friday, May 13, 2016.

At the conclusion of trial, the jury found the defendant guilty as charged. The trial court rendered judgment accordingly and sentenced the defendant to a total effective sentence of twenty-two years of incarceration, execution suspended after twelve years, followed by fifteen years of probation.

The defendant appealed and claimed that the trial court had abused its discretion in concluding that the state had good cause to amend its information during trial and that the defendant was not prejudiced by the amendment. *State* v. *Peluso*, supra, 187 Conn. App. 507. The Appellate Court disagreed and affirmed the judgment of the trial court. Id., 507, 511.

Thereafter, the defendant filed a petition for certification to appeal, which we granted, limited to the following two issues: (1) "Did the Appellate Court properly hold that the trial court did not abuse its discretion when it found that the state had demonstrated 'good cause' to amend the information after the commence-

ment of trial, as required by Practice Book § 36-18?" And (2) "[d]id the Appellate Court properly hold that the defendant failed to demonstrate that the state's amendment to the information caused prejudice to his substantive rights, in violation of . . . § 36-18?" *State* v. *Peluso*, 331 Conn. 924, 924–95, 207 A.3d 518 (2019).[7]

The defendant claims that the Appellate Court incorrectly concluded that the circumstances surrounding the state's late amendment to its information satisfied the requirements set forth in Practice Book § 36-18. See *State* v. *Peluso*, supra, 187 Conn. App. 501. Specifically, the defendant contends that the state could not demonstrate that it had good cause to amend its information, particularly insofar as the state knew, two to four weeks before trial, that the time frame it alleged in its information was inaccurate. The defendant contends that he was prejudiced by the late amendment because his defense was predicated on the fact that he did not live in the condominium complex in 2010 or 2011, the time frame alleged in the information. In conjunction with this claim, the defendant also argues that the trial court improperly shifted the burden of proving prejudice from the state to the defendant when the court requested that defense counsel explain the need for a five week continuance, as opposed to the one week continuance offered by the trial court.

The state contends that the Appellate Court correctly concluded that the trial court acted within its discretion in allowing the state to amend its information. See id. With respect to the good cause requirement, the state argues that the Appellate Court correctly concluded that, in light of S's age and the length of time between when the alleged offenses occurred and the prosecution of the case took place, the state had good cause to amend its information during trial to conform to S's testimony. See id., 508. In addition, the state claims that the defendant's substantive rights were not prejudiced by the late amendment because time was not an element of the offenses, and the defendant did not assert an alibi defense. The state also argues that the record supports the Appellate Court's conclusion that the defendant, regardless of the time frame alleged in the information, was on notice that the alleged abuse occurred when he lived at the condominium, before he moved out in February, 2009. See id., 509. Finally, the state contends that the trial court did not abuse its discretion in granting the defendant a one week continuance, particularly in light of the fact that defense counsel could not justify why a five week continuance was warranted.

We begin our analysis with the standard of review and relevant legal principles. "Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § [36-17]. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § [36-18]. . . . For

purposes of Practice Book § 36-18, a trial begins with the commencement of voir dire." (Citation omitted; internal quotation marks omitted.) *State* v. *Ayala*, 324 Conn. 571, 585, 153 A.3d 588 (2017).

Practice Book § 36-18 provides in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ." It is well settled that the state shoulders the burden of establishing that it has complied with the requirements of § 36-18 in seeking permission to amend the information. See, e.g., *State* v. *Ayala*, supra, 324 Conn. 585; see also, e.g., *State* v. *Tanzella*, 226 Conn. 601, 614, 628 A.2d 973 (1993). On appeal, our standard of review of the trial court's decision to permit an amendment to the information is one of abuse of discretion. See, e.g., *State* v. *Ayala*, supra, 585.

Our case law has traditionally viewed Practice Book § 36-18 as containing three predicates, all of which the state must prove to obtain permission to amend the information after the start of trial: (1) good cause for the amendment, (2) that no additional or different offense is charged, and (3) that no substantive right of the defendant will be prejudiced by the late amendment. See, e.g., id.; *State* v. *Tanzella*, supra, 226 Conn. 614. These requirements serve two main purposes. First, they encourage the state to prepare its case carefully. See, e.g., *State* v. *Tanzella*, supra, 614–15. Second, the requirements ensure that the defendant has adequate notice of the charges against which he must defend. See, e.g., id., 608. Accordingly, we have described § 36-18 not merely as a rule of procedure, but also as "a prophylactic rule designed to protect a criminal defendant's constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Ayala*, supra, 324 Conn. 586.

In this case, the defendant concedes that the state satisfied the second prong of the test—as no additional or different offense was charged—but he argues that the state failed to satisfy the first and third prongs of the test. Accordingly, we begin with the defendant's claim that the state lacked good cause to amend the information. We agree with the defendant.

"To comply with the first prong of the test and meet its burden of showing good cause to amend an information pursuant to [Practice Book § 36-18], the state must provide more than a bare assertion that it is merely conforming the charge to the evidence. . . . The state must demonstrate *why* the information necessitated substitution." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Victor C.*,

145 Conn. App. 54, 65, 75 A.3d 48, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013); see also, e.g., *State* v. *Jordan*, 132 Conn. App. 817, 825, 33 A.3d 307, cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012).

The state argues that it had good cause to amend the information given the young age of S. It is true that our courts have long adhered to the principle that "[t]he testimony of minor victims . . . requires special consideration . . . ." *State* v. *Enrique F.*, 146 Conn. App. 820, 824, 79 A.3d 140 (2013), cert. denied, 311 Conn. 903, 83 A.3d 350 (2014); cf. *In re Tayler F.*, 296 Conn. 524, 544–47, 995 A.2d 611 (2010) (creating special procedures for hearsay testimony of child witnesses pursuant to which trial court properly may conclude that child is unavailable if there is competent evidence that child will suffer psychological harm from testifying). This is because, "[i]n a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 596, 72 A.3d 379 (2013). A careful review of our case law in this context reflects that, although our courts have "allowed the state to amend the time frame in [its] information in light of a minor victim's testimony at trial"; *State* v. *Enrique F.*, supra, 824; they have consistently recognized that good cause exists only when some circumstance arises "that the state *could not have reasonably anticipated or safeguarded against before trial commenced.*" (Emphasis added.) *State* v. *Ayala*, supra, 324 Conn. 585–86. Accordingly, our courts have routinely allowed the state to amend its information in light of a minor victim's testimony at trial when the state could not have reasonably anticipated a change in the victim's testimony or when the state experienced some unforeseeable difficulty in obtaining a narrower time frame before trial.

The Appellate Court's decision in *State* v. *Enrique F.*, supra, 146 Conn. App. 823–25, is instructive. In *Enrique F.*, when trial commenced, the state's information alleged that the conduct that formed the basis of the risk of injury to a child charges had occurred "in or around January–June 2010 . . . ." (Internal quotation marks omitted.) Id., 823. Three days into trial, the state moved to amend its information to allege that the conduct occurred "in or around August 2009–August 2010," so that the information would conform to the victim's testimony that the conduct occurred when she was in the seventh grade. (Internal quotation marks omitted.) Id. In support of its motion to amend, the state contended that the victim's testimony "came in differently" than anticipated because it had expected that the victim would have been able to "narrow [the alleged conduct] down to a six month [time frame] and [was] unable to . . . ." (Internal quotation marks omitted.) Id., 825. Ultimately, the Appellate Court cited "the state's *unex-*

*pected difficulty* in establishing a narrower time frame through the testimony of the minor victim" in determining that good cause existed to amend the information. (Emphasis added.) Id.

Similarly, in *State* v. *Wilson F.*, 77 Conn. App. 405, 823 A.2d 406, cert. denied, 265 Conn. 905, 831 A.2d 254 (2003), the Appellate Court upheld the trial court's decision to allow the state to amend its information after the start of trial. Id., 414. The Appellate Court considered the age of the victim at the time of the alleged incidents, the victim's age at the time of trial, and the victim's trial testimony concerning dates. Id., 413. In finding that good cause existed for the late amendment in that case, the court specifically noted that there was no reason to believe that the state could have solicited a more accurate date from the victim in earlier interviews. Id.; see also, e.g., *State* v. *Mullien*, 140 Conn. App. 299, 312–13, 58 A.3d 383 (2013) (court found good cause for late amendment, in light of victim's age at time of alleged incidents, age at time of trial, and trial testimony concerning dates, as well as fact that there was "no reason to believe that a more accurate date could have been solicited in earlier interviews [with the victim or through other witnesses]" (internal quotation marks omitted)); *State* v. *Grant*, 83 Conn. App. 90, 98, 848 A.2d 549 (court found good cause for late amendment "by virtue of the change from the anticipated testimony of the victim, which occurred at trial"), cert. denied, 270 Conn. 913, 853 A.2d 529 (2004).[8]

Unlike the aforementioned cases, in which the state could not have reasonably anticipated a change in the minor victim's testimony before trial, in this case, the state freely acknowledges that it was well aware that the time frame alleged in its information was inaccurate or, at a minimum, incomplete. A review of S's testimony and the prosecutor's comments to the trial court confirms that, at their meeting two to four weeks prior to trial, which encompasses the time period during which the state filed its long form information that continued to allege that the abuse occurred in the year 2010 or 2011, S expressed uncertainty regarding the time frame alleged in the state's information. According to the prosecutor, in her pretrial interview with S, S indicated that the sexual assault occurred "sometime in grammar school, fifth grade or [earlier]," namely, between 2005 and 2011. Moreover, as the state conceded at oral argument before this court, it was also aware prior to the start of trial that the defendant did not live in the condominium complex in the year 2010 or 2011, the time frame alleged in its original information and the long form information filed on the first day of jury selection, as he moved out of the complex in 2009. The state, therefore, was aware—weeks prior to the start of trial— that the charged conduct had to have occurred between 2005 (the year S began grammar school) and 2009 (the year that the defendant moved out of the condominium

complex).

Although S's trial testimony further narrowed the time frame to third grade, a more specific time frame than the state may have anticipated prior to trial, the state's contention and the Appellate Court's conclusion; see *State* v. *Peluso*, supra, 187 Conn. App. 508; that this additional degree of specificity somehow obviated the state's duty to amend the information before trial to provide the defendant with the more accurate time frame learned weeks earlier miss the crux of the issue in this case. By focusing their respective good cause analyses principally on S's age—and the deficiencies in minor victims' testimony regarding dates, generally—the state, the trial court, and the Appellate Court were distracted from the central question to be addressed. The relevant inquiry is not whether the state had good cause to amend the information at *any* point in time in light of the minor victim's age and more specific trial testimony regarding the timing of the alleged abuse. Rather, the relevant inquiry is whether the state had good cause to amend its information after the start of trial, *notwithstanding the fact that it had first become aware—two to four weeks before the commencement of trial—that the time frame alleged in its information was inaccurate.* To be sure, because the state asserted that it did not know, before trial, that S would testify that the abuse occurred in third grade, it was not required to amend its information before trial to allege that the conduct occurred in 2008 or 2009. See, e.g., *State* v. *Laracuente*, 205 Conn. 515, 519, 534 A.2d 882 (1987) ("[t]he state does not have a duty . . . to disclose information which the state does not have" (internal quotation marks omitted)), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). But that fact does not obviate the state's duty to provide more accurate information within its possession prior to trial when it knows that the operative charging instrument is materially inaccurate. In short, within reasonable limits, the state and the defendant should have the same understanding of the relevant time period of the alleged crime prior to the start of trial. See, e.g., id. ("[t]he state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed" (internal quotation marks omitted)).

A review of the record confirms that, in this case, the state possessed information weeks earlier that could have provided the defendant with greater notice as to the relevant time frame than what it had previously provided in its information at both the time of the defendant's arrest and the commencement of jury selection. Accordingly, we conclude that the trial court abused its discretion in concluding that good cause existed for the late amendment in the present case, as the state was aware—two to four weeks prior to trial—that the time frame alleged in its information was inaccurate

and failed to act on the information it possessed. This was not a circumstance "that the state could not have reasonably anticipated or safeguarded against before trial commenced." *State* v. *Ayala*, supra, 324 Conn. 585–86.

Our conclusion that the trial court abused its discretion in permitting the state to amend its information without good cause does not end the inquiry. As we have explained, "a trial court's abuse of discretion in allowing the state to amend the information midtrial without a showing of good cause, *standing alone*, would fall squarely within our jurisprudence requiring the defendant to show that the nonconstitutional error was harmful to reverse the judgment of conviction." (Emphasis added.) Id., 592. This is because "the good cause requirement in Practice Book § 36-18, standing alone, is not intended to vindicate any constitutional right; rather, its purpose is to encourage the state to diligently prepare its case. . . . As such, consistent with our harmless error jurisprudence for nonconstitutional claims, our appellate case law has never treated a lack of good cause, in and of itself, as reversible error." (Citation omitted.) Id.

Accordingly, we turn to the prejudice component of our inquiry to determine whether the late amendment prejudiced the defendant's substantive rights. "[T]he burden clearly rests with the state at trial to demonstrate that the defendant's substantive rights are not prejudiced. See *State* v. *Tanzella*, supra, [226 Conn.] 614–15. On *appeal*, the defendant 'must provide a specific showing of prejudice in order to establish that he was denied the right of due process of law as a result of the state's delay in modifying the date alleged in the information.' *State* v. *Ramos*, 176 Conn. 275, 279–80, 407 A.2d 952 (1978)." (Emphasis in original.) *State* v. *Wilson F.*, supra, 77 Conn. App. 413 n.6.[9]

As we have explained, "it is entirely proper for a court to permit an amendment or a substitute information . . . to correct the time of the commission of the offense when time is not a material ingredient of the crime charged." *State* v. *Ramos*, supra, 176 Conn. 277; see also, e.g., id. (trial court did not abuse its discretion in allowing state to amend time frame in information when time was neither material element of crimes charged nor material factor in defendant's case). "For purposes of [Practice Book § 36-18], the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." *State* v. *Tanzella*, supra, 226 Conn. 608. Ultimately, if the late amendment has no effect on the defendant's asserted defense, there is no prejudice. See, e.g., id., 616 (amendments' effect was "logically distinct" from asserted defense).

In this case, the defendant does not dispute that the timing of the abuse was not a "material ingredient" of

the charged offenses. *State* v. *Ramos*, supra, 176 Conn. 277. Nevertheless, he argues that he was prejudiced by the state's late amendment because his entire *defense* was predicated on the fact that he did not live in the condominium complex in 2010 or 2011, the time frame alleged in the state's original information and, indeed, in its long form information filed on the first day of jury selection, more than fifteen months later.[10] We agree and conclude that, because the timing of the alleged abuse was a "material factor in the defendant's case"; id.; namely, his defense, the defendant was prejudiced by the state's late amendment. Therefore, we conclude that the trial court abused its discretion by allowing the state to file a late amendment to its information.

At the outset, we pause to emphasize that the defendant's claim of prejudice is bolstered by the fact that he may have won an acquittal as a matter of law had the state not amended its information and, instead, brought its long form information to judgment, alleging an inaccurate time frame of "on or about" 2010 or 2011. Cf. *United States* v. *Charley*, 189 F.3d 1251, 1272–73 (10th Cir. 1999) (when state's information alleged that sexual abuse occurred " 'on or about' " October, 1995, but, at trial, there was no evidence of even any contact between defendant and minor victim during entire year of 1995, court concluded that government had not satisfied its burden of proof and reversed defendant's conviction), cert. denied, 528 U.S. 1098, 120 S. Ct. 842, 145 L. Ed. 2d 707 (2000); *United States* v. *Gilliam*, Docket No. ARMY 20180209, 2020 WL 4013847, *4–5 (A. Crim. App. July 15, 2020) (when evidence revealed distinct possibility that certain acts of sexual assault could have happened approximately eleven months outside of time frame alleged by government, court found that evidence adduced at trial was insufficient to establish defendant's guilt and, accordingly, dismissed charges). This court has previously explained that, " '[when an information] alleges that an offense . . . occurred "on or about" a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. . . . The courts agree that when the [information] uses the "on or about" designation, proof of a date *reasonably near* to the specified date is sufficient.' " (Emphasis added.) *State* v. *Bergin*, 214 Conn. 657, 674, 574 A.2d 164 (1990). Nevertheless, we have never concluded that a date as much as ten months[11] outside the time frame alleged in the state's information, as in this case, was "reasonably near" that which it actually alleged at trial. In fact, case law from this state illuminating the concept has only gone so far as to hold that a less significant time differential, namely, days or, at most, a couple of months, can be "reasonably near" the date alleged. See, e.g., *State* v. *John B.*, 102 Conn. App. 453, 475–76, 925 A.2d 1235 (date alleged in information, May 8, 2001, was reasonably near date that state later argued, at trial,

was when charged offenses occurred, May 9, 2001), cert. denied, 284 Conn. 906, 931 A.2d 267 (2007); *State* v. *Carneiro*, 76 Conn. App. 425, 437–38, 820 A.2d 1053 (court determined that date in late April or early May, 1998, fell within charged time frame in information, which alleged that sexual assault occurred "on a date in approximately June, 1998" (emphasis omitted; internal quotation marks omitted)), cert. denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003); *State* v. *Clark*, 69 Conn. App. 41, 49–50, 794 A.2d 541 (2002) (date alleged in information, "on or about June 12, 1999," was within reasonable limits of date that state later argued, at trial, was when charged offense occurred, June 11, 1999 (internal quotation marks omitted)); see also, e.g., *United States* v. *Charley*, supra, 1272 ("[when] 'the phrase "on or about" is used in an indictment in connection with a specific date . . . if the prosecution proves that the offense was committed *within a few weeks* of the date, the proof will be deemed sufficient to hold [the] defendant responsible for the charge' " (emphasis added)). Thus, in this case, the defendant was not on notice with sufficiently adequate precision that the specific years of 2008 and 2009 were at issue. As a result, the charge was not sufficiently precise to allow the defendant to prepare an adequate defense, and, thus, the late amendment necessarily affected his asserted defense.

Turning now to our prejudice analysis, we look, first, to our decisions in *State* v. *Ramos*, supra, 176 Conn. 275, and *State* v. *Tanzella*, supra, 226 Conn. 601, for guidance. In *Ramos*,[12] this court rejected the defendant's claim that the state's amendment to its information prejudiced his ability to present his defense. *State* v. *Ramos*, supra, 279–80. The state's information in *Ramos*, filed in the Court of Common Pleas, alleged that the offenses occurred in May, 1975. Id., 278. When the case was transferred to the Superior Court, the information alleged that the offenses occurred on April 15, 1975. Id. Subsequently, the state prepared a substitute information, changing the date of the alleged offenses back to May, 1975, but failed to inform the defendant of the change until approximately eight months later, on the day before trial began. Id., 278–79. This court concluded that, because the date of the offenses was not "an essential element of the crimes with which the defendant was charged," and because the date was not "an otherwise material factor in the defendant's case," the trial court did not abuse its discretion by allowing the state to file the substitute information. Id., 277. Specifically, this court cited the defendant's lack of an alibi defense to the April 15, 1975 allegations as evidence that "he was not prejudiced in making his defense on the basis of the amended date." Id., 279.

In *Tanzella*, this court considered whether the trial court had abused its discretion when it allowed the

state to amend its information after the commencement of trial. *State* v. *Tanzella*, supra, 226 Conn. 602. In concluding that the trial court did not abuse its discretion in finding that the defendant's substantive rights were not prejudiced by the amendments to the information, we looked specifically to whether the defendant's theory of the case was "logically distinct from the difference between the original and amended charges." Id., 617. The defendant's defense to the charges brought against him in that case was that the encounter with the alleged victim was voluntary and consensual. See id., 615. The state's amendments, which "changed the mental states and types of harm for the charges of assault and threatening"; id.; were irrelevant to the defendant's defense and, therefore, "did not prejudice the defense because the effect of the amendments was logically distinct from the defense asserted." Id., 616. In addition, we noted that there was nothing in the record to suggest "that the defendant would have presented a different defense if the amended offenses had been alleged at the outset, or that the defendant suffered any unfair surprise that deprived him of substantive rights." Id.

Guided by this precedent, we conclude that, under the prejudice component of our inquiry, the operative question is whether the defendant's "theory of defense was logically distinct from the difference between the original and amended charges." Id., 617; see also, e.g., 42 C.J.S., Indictments § 273 (2022) ("if an amendment to an information does not affect any particular defense or change the positions of either of the parties, it does not violate [the] rights [to sufficient notice and an opportunity to be heard regarding the charge]"). When the amendment is *not* logically distinct from the defendant's theory of defense, the state's late amendment almost certainly will cause prejudice to the defendant's substantive rights, as the defendant has been deprived of timely notice of the charges "with sufficient precision to be able to prepare an adequate defense." *State* v. *Tanzella*, supra, 226 Conn. 608; see also, e.g., *Fisher* v. *People*, 471 P.3d 1082, 1087 (Colo. 2020) (factors relevant to prejudice inquiry include "(1) the theory of the defense . . . (2) the timing of the amendment . . . and (3) whether the amendment requires a different defense strategy" (citations omitted)); *Erkins* v. *State*, 13 N.E.3d 400, 405–406 (Ind. 2014) (explaining that, for purposes of determining whether defendant suffered prejudice as result of state's late amendment, "the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges," and, "if the amendment does not affect any particular defense or change the positions of either of the parties," defendant's substantive rights are not violated (internal quotation marks omitted)). When the late amendment at issue concerns the timing of the alleged offenses, as in the present case, our focus is on whether the timing

alleged in the information was a material component of the defendant's theory of the case. When the timing is an essential element of the crime charged, or when the date of the alleged offense is a "material factor in the defendant's case"; *State* v. *Ramos*, supra, 176 Conn. 277; the state's late amendment to the time frame alleged in the information will serve to prejudice the defendant's substantive rights.

Although it is true that the timing of an alleged offense is most often a material factor in a defense when alibi is the asserted theory, the date or time of the offense can be significant to a defense in other contexts as well. We therefore reject the Appellate Court's categorical rule stating that, "[i]f the defendant has not asserted an alibi defense and time is not an element of the crime, then there is no prejudice when the state amends the information to amplify or to correct the time of the commission of the offense . . . ." (Internal quotation marks omitted.) *State* v. *Peluso*, supra, 187 Conn. App. 508, quoting *State* v. *Enrique F.*, supra, 146 Conn. App. 826. This rule, originally articulated by the Appellate Court in *Enrique F.*, is derived from what is, in our view, too narrow a reading of *State* v. *Ramos*, supra, 176 Conn. 276–77. We observed, in *Ramos*, that the timing of the alleged offenses was not a central component of the defendant's defense because he did not raise an alibi defense, but we never stated that a defense of alibi was the *only* avenue through which a defendant could claim that the timing of an alleged offense was a "material factor in the defendant's case . . . ." (Footnote omitted.) Id., 277. Accordingly, we reject the Appellate Court's cramped understanding of prejudice in this context.

In this case, although the defendant did not assert an alibi defense,[13] he argued that his entire theory of the case was predicated on the fact that he did not live in the condominium complex during the time alleged in the state's information. At trial, defense counsel argued: "[O]ur defense is completely based on [the 2010 to 2011] time frame. . . . [O]ur defense is [that] we knew [that the defendant] didn't live [in the condominium complex] in 2010 or 2011. And, therefore, our entire defense was based on [the] fact that it was impossible for him to be there at that time. . . . [W]e questioned every single witness about the timing, and . . . the crux of our defense here was that it didn't happen during those time frames." A review of defense counsel's cross-examination of the state's witnesses confirms that this was the defendant's theory of the case. For example, after S testified, but before the state moved to amend its information, among other witnesses, the state called S's friend, I. The focal point of defense counsel's cross-examination of I was the timing of the allegations. He asked: "Did you tell the police that, when [S] told you [about the alleged instances of sexual assault], she said [they] happened when she was ten years old?" I

responded, "[y]es." I confirmed that she relayed this information to the school psychologist, G. During his subsequent cross-examination of G, defense counsel asked: "[W]hen you filed [the] form [reporting the alleged abuse] with [the Department of Children and Families], you . . . put that [S] was [eleven] years old, correct?" G responded: "Mm-hmm."

It is therefore not the case here, as it was in *Tanzella*, that "[t]he defendant could not have been prejudiced because his theory of defense was logically distinct from the difference between the original and amended charges." *State* v. *Tanzella*, supra, 226 Conn. 617; see also id., 615 (when amendments to information changed mental states and types of harm for charges of assault and threatening, there was no impact on defense that incident had involved voluntary, consensual encounter). Instead, the defendant claimed that his entire theory of defense was derailed by the changes made between the original and long form informations, and the subsequent amended information. This claim was reasonable given that, because of the change in the amended information to a time not reasonably near 2010 or 2011, the defendant was effectively precluded from making the argument that, contrary to what S said and the state alleged in its information, he did not live in the condominium complex in 2010 or 2011. Cf. *State* v. *McKnight*, 191 Conn. 564, 587, 469 A.2d 397 (1983) (substitute information alleging that different participant in robbery, not defendant, threatened to use firearm did not prejudice defendant who asserted alibi defense); *State* v. *Enrique F.*, supra, 146 Conn. App. 827 (expanding time frame in information by six months did not have effect on defense to intimate contact charge when defense was centered on attacking victim's credibility); *State* v. *Victor C.*, supra, 145 Conn. App. 67 (expanding time frame in information did not impact defendant's theory of defense, as defendant did not present alibi defense, and, instead, his theory was that victim had fabricated story because she did not like him). Moreover, we cannot say that there was nothing in the record to suggest "that the defendant would have presented a different defense if the amended offenses had been alleged at the outset, or that the defendant suffered any unfair surprise that deprived him of substantive rights." *State* v. *Tanzella*, supra, 616. To the contrary, at trial, defense counsel stated that, "had [he] known about the different dates," the defense "would have gone about things differently . . . ."

The state nevertheless argues that the defendant's theory of defense was that S was lying, and, because the defendant was fully able to explore this defense regardless of the dates alleged in the information, he was not prejudiced by the state's late amendment. We disagree.

Although, before the trial court, defense counsel con-

ceded that he did "attack the credibility of [S] a little bit," he claimed that this was not the defendant's "main theory." Consistent with this representation, although defense counsel pointed out some inconsistencies between S's direct examination testimony and the statement she gave to the police, most of his questioning centered on S's conflicting accounts of the timing of the alleged abuse.

The state further contends that the defendant was not prejudiced by its late amendment because, regardless of the time frame alleged in the state's original and long form informations, the defendant was on notice that the alleged abuse occurred at the time that he lived at the condominium, before he moved out in February, 2009. As we have explained, however, "[f]or purposes of [Practice Book § 36-18], the decisive question is whether the defendant was informed of the charges *with sufficient precision to be able to prepare an adequate defense*." (Emphasis added.) *State* v. *Tanzella*, supra, 226 Conn. 608. Regardless of whether the defendant knew that S's allegations of abuse centered on the time in which he lived in the condominium complex, his *defense* was predicated on the time frame S initially reported to the police and the state alleged in its information. For purposes of the prejudice inquiry, we must consider whether the late amendment to the state's information impaired the defendant's right to fair notice insofar as it hindered his ability to prepare an adequate defense. In this case, as we explained, the defendant's theory of defense—predicated on the fact that he did not live in the condominium complex during the time alleged in the state's information—was effectively precluded by the state's late amendment, and he, therefore, suffered prejudice.

Accordingly, we conclude that the trial court abused its discretion in permitting the state to amend its information after the start of trial, as the defendant's substantive rights were prejudiced as a result of the late amendment. Indeed, the state's late amendment vitiated the very purpose of the information, namely, to "apprise the defendant of what he must be prepared to meet." (Internal quotation marks omitted.) *Russell* v. *United States*, 369 U.S. 749, 764, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). "[B]ecause this error affected the fairness of the trial proceedings and impairs the reliability of [the] conviction, this abuse of discretion constitutes reversible error." (Internal quotation marks omitted.) *Fisher* v. *People*, supra, 471 P.3d 1089; see, e.g., *State* v. *Ayala*, supra, 324 Conn. 598 (acknowledging that defendant is entitled to new trial if defect caused by state's late amendment "impair[ed] his ability to prepare for trial or [to] present his defense"); see also, e.g., *State* v. *Artis*, 314 Conn. 131, 151, 101 A.3d 915 (2014) ("[S]tructural defect cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors

infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . .” (Internal quotation marks omitted.)); cf. *Howard* v. *State*, 122 N.E.3d 1007, 1017 (Ind. App.) (reversing defendant's conviction under amended counts because defendant's strategy was impaired by timing of state's amendment, and his substantial rights were therefore prejudiced), transfer denied, 137 N.E.3d 919 (Ind. 2019).

Because we conclude that the trial court abused its discretion in permitting the state's late amendment to its information, and the defendant's conviction must be reversed on the basis of that error, we need not reach the defendant's argument that the trial court abused its discretion in granting him a one week continuance, as opposed to the five weeks defense counsel initially requested. We do, however, pause to provide one point of clarification regarding the defendant's contention that the trial court granted him a continuance in an effort to help the state defeat any claim that the defendant suffered prejudice as a result of the state's amendment of the information.

The defendant's argument emanates from a misapprehension regarding the relatedness of the prejudice and continuance inquiries. The question as to whether the state may permissibly amend its information after the commencement of trial pursuant to Practice Book § 36-18 is *separate* from the inquiry as to whether the defendant should be afforded a continuance. Cf. *State* v. *Victor C.*, supra, 145 Conn. App. 69 (this court commented that, in arguing for continuance, “[d]efense counsel advanced no separate argument in favor of a continuance, but rather conflated that initial request with his argument in support of his objection to the proffered substitute information”).[14]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Justices McDonald, D'Auria, Mullins, Kahn, Ecker and Keller. Although Justice Kahn was not present at oral argument, she has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

** August 18, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We emphasize, at the onset, that the issue presented in this case, whether the trial court properly permitted the state to amend its information after the commencement of trial, is different from the issue of whether the state was *required* to amend its information or, alternatively, whether it could have gone to judgment on its original information alleging an inaccurate time frame. The state did not argue, at trial or on appeal, that it was not required to amend its information. Accordingly, we confine our analysis to the precise question posed in this appeal, namely, whether the trial court properly permitted the state to amend its information after the commencement of trial.

[2] In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person

protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

Moreover, in accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] Although two of the seven counts in the long form information used language that was slightly different from the quoted language, these minor differences do not affect our analysis.

[4] Later in S's testimony, defense counsel asked: "[W]ho told you that [the defendant and his girlfriend] didn't live in that unit in the year[s] 2010 and 2011?" S responded, "I don't know." Later on, when asked directly whether her mother told her that the defendant did not live in the condominium complex in the years alleged in the information, S responded, "[y]es."

[5] The reference to good cause, in fact, was introduced by the trial court, not by the prosecutor. Following the state's motion to amend, the trial court commented: "I do think it's appropriate for the court to [permit the state to amend its information]. I will say, having tried [child] sexual assault cases, it is fairly common that a child, [like] in this case, an eight or ten year old . . . [will] not disclose [the alleged abuse] for a number of years, [and it] is also not unusual to get [a] date wrong." Only then, in response to defense counsel's subsequent argument in opposition to the state's motion to amend, did the prosecutor argue: "This is a child sexual assault case. *And, as the court indicated earlier*, these types of cases are such that the children, being so young, [delay] . . . their disclosure, [so] exact, precise dates and time[s] are difficult for them to recall." (Emphasis added.)

[6] Although the trial court did not make any explicit findings regarding prejudice, it went on to permit the state to amend its information, which required a finding that the substantive rights of the defendant would not be prejudiced.

[7] Although the certified questions reference Practice Book § 38-18, both parties agree that the provision at issue in this case is Practice Book § 36-18. As a result, pursuant to our authority to modify certified questions, we reformulate the certified questions to accurately reflect the relevant provision in the rules of practice. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191–92, 884 A.2d 981 (2005).

[8] To the extent the Appellate Court's decision in *State* v. *Victor C.*, supra, 145 Conn. App. 54, suggests a contrary good cause analysis, we respectfully disagree. In *Victor C.*, the state's information stated that the alleged crimes occurred at "an undetermined date in November or December of 2009 . . . ." (Internal quotation marks omitted.) Id., 63. After the start of trial, the state sought to amend its information to expand the time frame to "an undetermined date between March and December of 2009 . . . ." (Internal quotation marks omitted.) Id. The Appellate Court concluded that the state established good cause for its late amendment because the prosecutor adequately explained why the information necessitated substitution. See id., 66.

In *Victor C.*, the victim initially stated that the alleged abuse occurred in November or December, 2009, but, in a pretrial interview, she alleged with certainty that the incident occurred while her mother was staying at a drug rehabilitation center. Id. The state learned that the victim's uncle would be testifying that the victim's mother attended the rehabilitation center in March, 2009, through September, 2009, necessitating the amended time frame. Id. It is unclear from the Appellate Court's decision, however, *when* the state learned that the victim's uncle would be testifying regarding the March through September, 2009 time frame. Thus, it is entirely possible that this was a circumstance in which there is no reason to "believe that a more accurate date could have been solicited [prior to the commencement of trial]." *State* v. *Wilson F.*, supra, 77 Conn. App. 413. Nevertheless, to the extent *Victor C.* is inconsistent with the principle that good cause, in this context, exists only when there is some circumstance that the state could not reasonably have anticipated or safeguarded against before the commencement of trial; see, e.g., *State* v. *Ayala*, supra, 324 Conn. 585–86; we now reaffirm that this is the principle that guides the good cause inquiry.

[9] We disagree with the defendant that our decision in *State* v. *Ayala*, supra, 324 Conn. 571, supports his argument that the burden, on appeal, rests with the state to demonstrate that the defendant's substantive rights were not prejudiced by the state's late amendment to its information. In *Ayala*, we concluded that the state did not demonstrate good cause to amend its information and that the state impermissibly charged additional offenses.

Id., 574–75. We went on to explain that, when the state amends its information after the start of trial to charge an additional or different offense, it is a matter of constitutional magnitude, namely, a violation of the defendant's constitutional right to fair notice of the charges against him, and, thus, the state must prove that the error was harmless beyond a reasonable doubt. See id., 598–99. Although confusion may have emanated from the interchangeable use of the terms "prejudice" and "harmless error" in *Ayala*, it is clear from the full context of the decision that this court went on to conduct a harmless error analysis, not a prejudice analysis. See, e.g., *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 424–25, 3 A.3d 919 (2010) ("an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding"). Although regrettable, our use of these terms interchangeably in *Ayala* was not without reasonable basis; the determinations as to whether the amendment prejudiced the defendant's substantive rights and whether the error was harmless involve similar considerations. It was made clear, earlier in our decision in *Ayala*, that, in light of our conclusion that Practice Book § 36-18 is violated without a showing of prejudice, we did not consider whether the defendant's substantive rights were prejudiced by the late amendment. *State* v. *Ayala*, supra, 584 n.5.

[10] The defendant further argues that, when the state moves to amend the time frame in its information in child sexual assault cases, defendants should be entitled to a presumptive four week continuance to undertake "an investigation [into] the child's life to determine whether there are grounds to believe that the child may be confabulating various events from earlier in their childhood." He further contends that, "[when] a continuance is required to ensure that the state can satisfy its burden under [Practice Book] § 36-18, it should be the state that retains the burden [of] rebutting the presumption that the presumptive four week continuance is not reasonable." We agree with the Appellate Court that a presumptive four week continuance "would be an unworkable constraint on the inherent discretion of the trial court" because it would create "a presumptively reasonable continuance period that would not account for the unique factual and procedural circumstances that may arise in a given case." (Internal quotation marks omitted.) *State* v. *Peluso*, supra, 187 Conn. App. 510 n.9.

[11] We note that the evidence, including the testimony of the defendant and his girlfriend, established that the defendant moved out of the condominium complex in February, 2009. The earliest time frame alleged in the state's original and long form informations was 2010. Affording the greatest amount of latitude to the state, this would result in a time differential of at least ten months. According to S's trial testimony, the alleged abuse could have occurred any time during her third grade school year, before the defendant moved out in 2009, and, therefore, an even greater time differential was possible.

[12] Although, in *Ramos*, the state was granted permission to amend its information before trial began, the defendant contended that the amendment constituted a due process violation, which required him to make a specific showing of prejudice. See *State* v. *Ramos*, supra, 176 Conn. 276. Accordingly, we find *Ramos* instructive insofar as it informs our prejudice inquiry.

[13] An "alibi" is "a claim by the defendant that he or she was in a place different from the scene of the crime at the time of the alleged offense." *State* v. *Tutson*, 278 Conn. 715, 733, 899 A.2d 598 (2006). On appeal, the defendant does not argue that he raised such a defense at trial, which would have required him, upon written demand of the state, to file a written notice of his intention to offer an alibi defense. See Practice Book § 40-21. The defendant, in this case, was not alleging that he was not present when the crime was committed but, instead, that the alleged events could not have occurred during the period that S originally told the police. Although different, both theories are intended to create reasonable doubt by attacking the time frame alleged in the information.

[14] We therefore explicitly reject the defendant's characterization of the circumstances surrounding the trial court's offer to grant the defendant a continuance. Although the discussion surrounding the continuance was made in the context of discussing the prejudice component of Practice Book § 36-18, this does not support an inference that the trial court offered the defendant a continuance to help the state prove that its amendment would not prejudice the defendant's substantive rights. Here, the trial court determined that the state had good cause to amend its information and that no additional or different offense was charged. Although the trial court did not make an explicit finding that the amendment would not prejudice the defendant's substantive rights, we presume that it made this finding by

virtue of the fact that it allowed the state to amend its information and a conclusion that the amendment would not prejudice the defendant's substantive rights is essential to permitting the state to amend its information. See, e.g., *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 385, 568 A.2d 431 (1990). Although the trial court offered the defendant a continuance—in the midst of its consideration of the requirements set forth in § 36-18—its decision to grant the defendant a continuance was separate from the trial court's distinct inquiry as to whether the state could amend its information after the start of trial.

—————————————————